# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

**DV INJURY LAW, PLLC,**
**DV INJURY LAW FIRM LLP,**
**and HAH, LLP,**

Plaintiffs,

                          **CASE NO. 5:24-cv-12772-JEL-APP**

vs.

**TORT PRIVATE INVESTIGATIONS, LLC,**
**DAVID BAUMAN, SARAH HALE BAUMAN**
**and BENTLEY CONSULTING, LLC.**

Defendants.

_____

## FIRST AMENDED COMPLAINT

NOW COME PLAINTIFFS, DV INJURY LAW PLLC, DV INJURY LAW FIRM LLP and HAH, LLP and for their First Amended Complaint state:

## THE PARTIES

1. Plaintiff DV Injury Law, PLLC ("DV") is a Domestic Michigan Professional Limited Liability Company with its principal and only place of business at 30095 Northwestern Hwy, Ste. 102, Farmington Hills, Michigan 48334. Its Resident Agent is Venar Ayar, a licensed attorney in Michigan, is located at 30095 Northwestern Hwy, Suite 102, Farmington Hills, MI 48332.

2. Plaintiff DV Injury Law, LLP ("DV LLP ") is a Washington D.C. Limited Liability Partnership with its principal and place of business at 30095 Northwestern Hwy, Ste. 102, Farmington Hills, Michigan 48334. Its Resident Agent is Registered Agents,, Inc, 1717 N Street NW, Washington, DC 20036. Its registered Washington D.C. trade names are DV Injury Law and Heilbrun Law Firm.

3. Plaintiff HAH, LLP ("HAH") is a Washington, D.C. Limited Liability Partnership with its principal and only place of business at 30095 Northwestern Hwy, Ste. 102, Farmington Hills, Michigan 48334.

4. Defendant Tort Private Investigations, LLC ("TPI) is a California Limited Liability Company, California corporate number 202250618278, with its principal place of business at 2108 North Street, Suite 8180, Sacramento, CA 95816. Its Resident Agent is Northwest Registered Agent, Inc. 2108 North Street, Suite N, Sacrament, CA  95816. Tort Concierge Integrated ("TCI") is an assumed name of Tort Private Investigations, LLC.

5. Defendant David Bauman is an individual who is licensed to practice law in Missouri and Illinois, and he resides in California.

6. Defendant Sarah Hale Bauman is an individual who is licensed to practice law in Missouri, and she resides in California.

2

7. Defendant Bentley Consulting, LLC ("Bentley") is a California Limited Liability Company, California corporate number 202252210489, with its principal place of business at 2108 North St., Suite N, Sacramento, CA 95816. Its Resident Agent is Northwest Registered Agent, Inc., 2108 N Street, Suite N, Sacramento, CA 95816.

## JURISDICTION

8. Jurisdiction is based on 28 U.S.C Section 1331 diversity as Plaintiff and Defendants are citizens of different states and the amount in controversy is greater than $75,000.00, exclusive of costs, interest and attorney fees. In addition, the causes of action arose in Michigan. This case is in part based on violations of federal statutes, such as 18 USC Sections 1961–1968 the Civil Racketeer Influenced and Corrupt Organizations Act (RICO) and the Health Insurance Portability and Accountability Act of 1996 (HIPPA), Pub. L. 104-191.

## FACTUAL BACKGROUND

9. Plaintiffs are involved in mass torts, such as Camp Lejeune claims under the Camp Lejeune Justice Act (CLJA) 28 USC 171 and Hair Relaxer Product Liability Litigation.

10. Plaintiffs came into contact David Bauman and Sarah Hale Bauman, who were working as attorneys at a California law firm at the time.

11. Defendants David Bauman and Sarah Bauman are not licensed to practice law in California.

12. David Bauman and Sarah Bauman represented to Plaintiffs that they, the Baumans, would form a separate company, Bentley Consulting, to completely manage mass torts cases and told Plaintiffs not to discuss it with the Beauman's employer.

13. The Baumans told the Plaintiffs that the purpose of Bentley Consulting would be to consult with them on their mass tort cases such as Camp Lejeune and Hair Relaxer claims and cases.

14. The Baumans formed Bentley Consulting on August 26, 2022.

15. Bentley contracted with Plaintiffs. The contract included that Bentley Consulting LLC would be paid 12% of all gross attorney fees. For this, DV had to pay the bill to TPI and Bentley and the Baumans would handle the entire case work up.

16. The Baumans urged Plaintiffs to hire an alleged totally separate company, Tort Concierge Integrated (TCI), to provide premier full case management litigation support, which would charge its own fees in addition to Bentley's fees. This company was anything but separate or independent. It was the Baumans conspiring in ways to bilk the Plaintiffs out of more money. TCI was actually an assumed name of TPI.

17. TPI was formed on May 10, 2022.

18. The Baumans told Plaintiffs that TPI had dozens of employees and support personnel and managers to fully and completely service Plaintiffs' mass tort clients. The Baumans lied about the existence of the numbers of employees, staff, their training and abilities. There was not appropriate support for handling Plaintiffs' case management needs and clients.

19. Contrary to the statements of the Baumans, TPI was also owned and managed by the Baumans. This plot was simply a way to deceive Plaintiffs and defraud them of more money.

20. The Baumans' ownership of Bentley Consulting, LLC and TPI was a direct conflict of interest because the Baumans, through Bentley, were supposedly watching and supervising the actions of the allegedly independent TPI.

21. The Defendants were to be the case managers for Plaintiffs' mass tort (Camp Lejeune and Hair Relaxer) clients and to work up the cases through keeping in contact with the clients through phone calls and otherwise having the clients' cases in a final position to settle or file. Defendants were to perform various duties and get paid at various milestones regarding Plaintiffs' cases. The first milestone was onboarding, in other words, opening files, putting the files into their system and preparing them for work up.

22. The second milestone included intake telephone interviews, gathering information, informing the client about litigation process. Reaching out to the client up to 20 times to welcome and onboard him or her and performing a quality control check that all necessary forms, information and documents were complete. This step also required regular communication and updates with the client – a task the Baumans promised was done at least once a month.

23. The third milestone was ordering medical records. This involved using authorizations and other information obtained in the second step to order medical records from National Records Retrieval ("NRR"). This step included using HIPAA forms already obtained by Plaintiffs in the intake process. If the medical facility did not accept the electronic signatures already obtained, then Defendants were obligated to obtain wet signatures from authorized people so the Defendant's record orders would be accurate and successful.

24. The fourth milestone was performing a total review and analysis of all medical records with nurse review, critical document extraction and creating an accurate summary of the medical records and any mitigating factors. The goal was that the cases would be "worked up" in accordance to the contract. "Worked up" means that Defendants would find the proof of injury and proof of residency necessary for a successful filing with the Camp Lejeune flings or

Plaintiffs would have the information needed to file a Hair Relaxer claim, which required a long plaintiff fact sheet and proof of injury.

25. Plaintiffs previously contracted with Case Works LLC as their case management team, but the Baumans told Plaintiffs they would match and do everything that Case Works promised in their contract.

26. Defendants conspired together and defrauded Plaintiffs out of $2,398,400, itemized below. Defendants' conspiracy included sending out invoices for work which was not performed, partially performed, performed poorly or was impossible to perform. Defendants excelled at failing to provide transparency as to reporting case status and constantly and continually lied about who was performing the work and who was actually profiting from the proceeds. The Baumans concealed the members of ownership as well as the case workers employed by TPI. Defendants, all working in concert, did this knowingly with ill intent to defraud Plaintiffs.

27. Defendants failed to show any call logs showing that any intake calls were made, any intake forms were filled out, or what progress or information Defendants were making on the second stage described above. Defendants unilaterally ordered medical records without proper authorization and authorizations specifically for cases Defendants knew were signed by the incorrect medical record requestor, and without performing the required due

diligence to evaluate if the clients qualified for mass tort relief without speaking with the client. This directly caused additional damages to the Plaintiffs as they were the entities who the paid for the expense of the ordered medical records. Plaintiffs suffered an additional 18% loss as the money for medical records was and is costing Plaintiffs 12%.

28. The following itemization is of invoices billed by TCI from 2108 North Street, Suite 8180, Sacramento, CA 95816.

29. On December 8, 2022, Plaintiffs received Invoice Number 10035 from TCI for $57,300. This invoice was for Intake Calls with 382 clients. All Intake Calls were listed as October 4, 2022, as the date of service. This invoice was not true. These intake calls did not happen. The Defendants submitted false bills. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

30. On January 19, 2023, Plaintiffs received Invoice Number 10041 from TCI for $22,350. This invoice was for the opening of 149 case files. This invoice was not true. These opening of 149 cases was false. The Defendants submitted false bills. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

31. On February 12, 2023, Plaintiffs received Invoice Number 10048 from TCI for $23,400. This invoice was for the opening of 156 case files. This invoice was not true. These opening of 156 cases was false. The Defendants submitted false bills. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

32. On February 23, 2023, TCI submitted to Plaintiffs Invoice Number 10048 in the amount of $23,400 for opening 156 case files for Camp Lejeune files. Plaintiffs paid $23,400. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

33. On February 23, 2023, TCI submitted to Plaintiffs Invoice Number 10051 in the amount of $62,850 for the opening of 419 case files for Camp Lejeune files. Plaintiffs paid this $62,850. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

34. On February 23, 2023, TCI submitted to Plaintiffs Invoice Number 10051 in the amount of $62,850 for the opening of case files for Camp Lejeune cases. Plaintiffs paid this $62,850. It was later learned that Defendants conspired

together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

35. On April 19, 2023, TCI submitted to Plaintiffs Invoice Number 10056 in the amount of $54,000 for the opening of 360 case files for Camp Lejeune cases. Plaintiffs paid this $54,000. It was later learned that Defendants conspired together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

36. On April 19, 2023, TCI submitted to Plaintiff Invoice Number 10054 in the amount of $150 for the ordering of medical records for Hair Relaxer cases. Plaintiff paid this $150. It was later learned that Defendants conspired together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

37. On June 23, 2023, TCI submitted to Plaintiff Invoice Number 10076 in the amount of $99,450 for 663 openings of case files or intake calls for Camp Lejeune files. Plaintiff paid this $99,450. It was later learned that Defendants conspired together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

38. On June 26, 2023, TCI submitted to Plaintiff Invoice Number 10077 in the amount of $67,350 for the opening of 449 case files for Camp Lejeune files.

Plaintiff paid this $67.350. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

39. On August 1, 2023, TCI submitted to Plaintiff Invoice Number 10079 in the amount of $14,550 for the ordering of medical records for Hair Relaxer cases. Plaintiffs paid this $14,550. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

40. On August 1, 2023, TCI submitted to Plaintiffs Invoice Number 10090 in the amount of $34,500 for ordering 230 sets of medical records for Camp Lejeune cases. Plaintiffs paid this $34,500. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

41. On September 21, 2023, TCI submitted to Plaintiffs Invoice Number 10087 in the amount of $82,950 for the opening of 553 case files for Camp Lejeune files. Plaintiffs paid this $82,950. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

42. On September 27, 2023, TCI submitted to Plaintiffs Invoice Number 10089 in the amount of $32,100 for the opening of 643 case files for Camp Lejeune files. Plaintiffs paid this $32,100. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

43. On September 28, 2023, TCI submitted to Plaintiffs Invoice Number 10090 in the amount of $36,750 for ordering 245 medical records for Camp Lejeune files. Plaintiffs paid this $36,750. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

44. On October 5, 2023, TCI submitted to Plaintiffs Invoice Number 10092 in the amount of $33,450 for the opening of 223 case files for Camp Lejeune files. Plaintiffs paid this $33,450. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

45. On October 13, 2023, TCI submitted to Plaintiffs Invoice Number 10093 in the amount of $32,500 for the ordering of medical records for Camp Lejeune files. Plaintiffs paid this $32,500. It was later learned that Defendants

conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

46. On October 19, 2023, TCI submitted to Plaintiffs Invoice Number 10094 in the amount of $62,400 for ordering 416 medical records for Camp Lejeune files. Plaintiffs paid this $62,400. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

47. On October 26, 2023, TCI submitted to Plaintiffs Invoice Number 10095 in the amount of $15,900 for 318 intake calls for Camp Lejeune files. Plaintiffs paid this $15,900. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

48. On October 26, 2023, Defendants submitted to Plaintiffs Invoice Number 10096 in the amount of $15,900 for ordering 106 sets of medical records for Camp Lejeune files. Plaintiffs paid this $15,900. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

49. On November 3, 2023, TCI submitted to Plaintiffs Invoice Number 10098 in the amount of $27,300 for 182 intake calls for Camp Lejeune files. Plaintiffs paid this $27,150. It was later learned that Defendants conspired together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

50. On November 3, 2023, TCI submitted to Plaintiff Invoice Number 10099 in the amount of $27,150 for the ordering of 1,810 sets of medical records for Camp Lejeune files. Plaintiffs paid this $27,150. It was later learned that Defendants conspired together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

51. On November 9, 2023, TCI submitted to Plaintiff Invoice Number 10100 in the amount of $28,650 for 1,810 intakes for Camp Lejeune files. Plaintiff paid this $28,650. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

52. On November 9, 2023, TCI submitted to Plaintiff Invoice Number 10101 in the amount of $27,150 for ordering medical records for Camp Lejeune files. Plaintiff paid this $27,150. It was later learned that Defendants conspired

together to defraud and steal from Plaintiff as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

53. On November 13, 2023, TCI submitted to Plaintiff Invoice Number 99 in the amount of $27,150 for ordering 1,810 sets of medical records for Camp Lejeune files. Plaintiffs paid this $27,150. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

54. On November 16, 2023, TCI submitted to Plaintiffs Invoice Number 10104 in the amount of $27,150 for 1,810 intake calls for Camp Lejeune files. Plaintiffs paid this $27,150. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

55. On November 16, 2023, TCI submitted to Plaintiffs Invoice Number 10103 in the amount of $22,650 for opening 151 Camp Lejeune files. Plaintiffs paid this $22,650. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

56. On November 16, 2023, TCI submitted to Plaintiffs Invoice Number 10105 in the amount of $36,600 for the ordering of medical records for Camp

Lejeune files. Plaintiffs paid this $36,600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

57. On November 30, 2023, TCI submitted to Plaintiffs Invoice Number 10106 in the amount of $38,700 for 258 intake calls for Camp Lejeune files. Plaintiffs paid this $38,700. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

58. On November 30, 2023, TCI submitted to Plaintiffs Invoice Number 10107 in the amount of $38,850 for ordering 677 sets of medical records for Camp Lejeune files. Plaintiffs paid this $38,850. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

59. On December 7, 2023, TCI submitted to Plaintiffs Invoice Number 10108 in the amount of $16,500 for opening cases files for Camp Lejeune files. Plaintiffs paid this $16,500. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

60. On December 7, 2023, TCI submitted to Plaintiffs Invoice Number 10109 in the amount of $4,650 for 31 intake calls for Camp Lejeune files. Plaintiffs paid this $4,650. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

61. On December 7, 2023, TCI submitted to Plaintiffs Invoice Number 10110 in the amount of $4,800 for ordering 32 sets of medical records for Camp Lejeune files. Plaintiffs paid this $4,800. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

62. On December 14, 2023, TCI submitted to Plaintiffs Invoice Number 10111 in the amount of $9,150 for intake calls for Camp Lejeune files. Plaintiffs paid this $9,150. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

63. On December 14, 2023, TCI submitted to Plaintiffs Invoice Number 10112 in the amount of $8,700 for ordering 174 sets of medical records for Camp Lejeune files. Plaintiffs paid this $8,700. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not

performed, performed incorrectly, performed improperly or performed unnecessarily.

64. On December 21, 2023, TCI submitted to Plaintiffs Invoice Number 10113 in the amount of $6,750 for 45 intake calls for Camp Lejeune files. Plaintiffs paid this $6,750. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

65. On December 21, 2023, TCI submitted to Plaintiffs Invoice Number 10114 in the amount of $6,600 for the ordering of 44 sets of medical records for Camp Lejeune files. Plaintiffs paid this $6,600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

66. On January 11, 2024, TCI submitted to Plaintiffs Invoice Number 10115 in the amount of $12,600 for opening 96 files for Camp Lejeune files. Plaintiffs paid this $12,600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

67. On January 11, 2024, TCI submitted to Plaintiffs Invoice Number 10117 in the amount of $13,500 for ordering 96 sets of medical records for Camp

Lejeune files. Plaintiffs paid this $13,500. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

68. On January 20, 2024, TCI submitted to Plaintiffs Invoice Number 10119 in the amount of $4,650 for ordering of medical records for Camp Lejeune files. Plaintiffs paid this $14,650. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

69. On January 26, 2024, TCI submitted to Plaintiffs Invoice Number 10120 in the amount of $3,150 for 21 intake calls for Camp Lejeune files. Plaintiffs paid this $3,150. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

70. On January 26, 2024, TCI submitted to Plaintiffs Invoice Number 10121 in the amount of $4,800 for ordering 96 sets of medical records for Camp Lejeune files. Plaintiffs paid this $4,800. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

71. On January 26, 2024, TCI submitted to Plaintiffs Invoice Number 10122 in the amount of $3,900 for 25 case reviews for Camp Lejeune files. Plaintiffs

paid this $3,900. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

72. On February 3, 2024, TCI submitted to Plaintiffs Invoice Number 10123 in the amount of $2,550 for 17 intake calls for Camp Lejeune files. Plaintiffs paid this $2,550. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

73. On February 3, 2024, TCI submitted to Plaintiffs Invoice Number 10124 in the amount of $6,450 for ordering 43 sets of medical record for Camp Lejeune files. Plaintiffs paid this $6,450. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

74. On February 3, 2024, TCI submitted to Plaintiffs Invoice Number 10125 in the amount of $4,950 for 33 case reviews for Camp Lejeune files. Plaintiffs paid this $4,950. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

75. On February 3, 2024, TCI submitted to Plaintiffs Invoice Number 10126 in the amount of $23,500 for opening cases for Hair Relaxer cases. Plaintiffs paid this $23,500. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

76. On February 8, 2024, TCI submitted to Plaintiffs Invoice Number 10127 in the amount of $450 for opening files for Camp Lejeune files. Plaintiffs paid this $450. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

77. On February 8, 2024, TCI submitted to Plaintiffs Invoice Number 10128 in the amount of $6,150 for intake calls for Camp Lejeune files. Plaintiffs paid this $6,150. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

78. On February 8, 2024, TCI submitted to Plaintiffs Invoice Number 10129 in the amount of $8,100 for ordering medical records for Camp Lejeune files. Plaintiffs paid this $8,100. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

79. On February 8, 2024, TCI submitted to Plaintiffs Invoice Number 10130 in the amount of $13,350 for 267 case reviews for Camp Lejeune files. Plaintiffs paid this $13,350. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

80. On February 29, 2024, TCI submitted to Plaintiffs Invoice Number 10132A in the amount of $23,700 for opening 158 cases for Hair Relaxer cases. Plaintiffs paid this $23,700. It was later learned that Defendants conspired

together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

81. On February 28, 2024, TCI submitted to Plaintiffs Invoice Number 10133 in the amount of $150 for Hair Relaxer cases. Plaintiffs paid this $150. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

82. On February 28, 2024, TCI submitted to Plaintiffs Invoice Number 10134 in the amount of $26,850 for opening 179 case files for Camp Lejeune files. Plaintiffs paid this $26,850. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

83. On February 28, 2024, TCI submitted to Plaintiffs Invoice Number 10135 in the amount of $13,050 for 87 intake calls for Camp Lejeune files. Plaintiffs paid this $13,050. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

84. On February 28, 2024, TCI submitted to Plaintiffs Invoice Number 10136 in the amount of $15,900 for ordering 106 sets of medical records for Camp Lejeune files. Plaintiffs paid this $15,900. It was later learned that Defendants

did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

85. On February 28, 2024, TCI submitted to Plaintiffs Invoice Number 10137 in the amount of $8,250 for 55 case reviews for Camp Lejeune files. Plaintiffs paid this $8,250. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

86. On March 6, 2024, TCI submitted to Plaintiffs Invoice Number 10138 in the amount of $16,950 for intake calls for Camp Lejeune files. Plaintiffs paid this $16,950. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

87. On March 6, 2024, TCI submitted to Plaintiffs Invoice Number 10139 in the amount of $16,500 for ordering 110 sets of medical records for Camp Lejeune files. Plaintiffs paid this $16,500. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

88. On March 6, 2024, TCI submitted to Plaintiffs Invoice Number 10141 in the amount of $150 for opening a file for a Hair Relaxer file. Plaintiffs paid this $150. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

89. On March 10, 2024, TCI submitted to Plaintiffs Invoice Number 10140A in the amount of $22,800 for intake calls for Camp Lejeune files. Plaintiffs paid this $22,800. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

90. On March 13, 2024, TCI submitted to Plaintiffs Invoice Number 10143 in the amount of $300 for intake calls for Camp Lejeune files. Plaintiffs paid this $300. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

91. On March 13, 2024, Plaintiffs received Invoice Number 10145 from Tort Concierge for $8,400.00. This invoice was for ordering 56 sets of medical records. The invoice was based on fraud and deceit. Medical records were not to be ordered until clients had been talked with and their cases discussed. It was necessary to make certain the client was qualified under the requirements of Camp Lejeune rules.

92. On March 21, 2024, TCI submitted to Plaintiffs Invoice Number 10148 in the amount of $150 for opening one Camp Lejeune file. Plaintiffs paid this $150. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

93. On March 21, 2024, TCI submitted to Plaintiffs Invoice Number 10151 in the amount of $44,250 for 295 case reviews of Camp Lejeune files. Plaintiffs paid

this $44,250. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

94. On March 29, 2024, TCI submitted to Plaintiffs Invoice Number 10153 in the amount of $150 for opening a file for a Camp Lejeune file. Plaintiffs paid this $150. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

95. On March 29, 2024, TCI submitted to Plaintiffs Invoice Number 10155 in the amount of $9.600 for ordering 641 sets of medical records for Camp Lejeune files. Plaintiffs paid this $9,600. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

96. On March 29, 2024, TCI submitted to Plaintiffs Invoice Number 10158 in the amount of $10,200 for ordering 68 medical records for Hair Relaxer files. Plaintiffs paid this $10,200. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

97. On April 4, 2024, TCI submitted to Plaintiffs Invoice Number 10159 in the amount of $4,500 for intake calls for Camp Lejeune files. Plaintiffs paid this $4,500. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

98. On April 4, 2024, TCI submitted to Plaintiffs Invoice Number 10161 in the amount of $16,650 for 111 case reviews for Camp Lejeune files. Plaintiffs paid this $16,650. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiff.

99. On April 4, 2024, TCI submitted to Plaintiffs Invoice Number 10162 in the amount of $9,450 for 63 intake calls for Hair Relaxer files. Plaintiffs paid this $9,450. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

100. On April 4, 2024, TCI submitted to Plaintiffs Invoice Number 10163 in the amount of $8,700 for ordering 58 sets of medical records for Hair Relaxer files. Plaintiffs paid this $8,700. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

101. On April 17, 2024, TCI submitted to Plaintiffs Invoice Number 10164 in the amount of $16,050 for 107 intake calls for Camp Lejeune files. Plaintiffs paid this $16,050. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

102.     On April 17, 2024, TCI submitted to Plaintiffs Invoice Number 10165 in the amount of $18,300 for 122 case reviews for Camp Lejeune files. Plaintiffs paid this $18,300. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

103.     On April 17, 2024, TCI submitted to Plaintiffs Invoice Number 10166 in the amount of $52,950 for 353 case reviews for Camp Lejeune files. Plaintiffs paid this $52,950. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

104.     On April 17, 2024, TCI submitted to Plaintiffs Invoice Number 10167 in the amount of $13,650 for Hair Relaxer cases. Plaintiffs paid this $13,650. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

105.     On April 17, 2024, TCI submitted to Plaintiffs Invoice Number 10168 in the amount of $12,600 for Hair Relaxer cases. Plaintiffs paid this $12,600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

106.     On April 25, 2024, TCI submitted to Plaintiffs Invoice Number 10169 in the amount of $43,800 for Camp Lejeune cases. Plaintiffs paid this $43,800. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

107.     On April 25, 2024, TCI submitted to Plaintiffs Invoice Number 10170 in the amount of $7,200 for Hair Relaxer cases. Plaintiffs paid this $7,200. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

108.     On April 25, 2024, TCI submitted to Plaintiffs Invoice Number 10171 in the amount of $1,950 for ordering 10 sets of medical records for Hair Relaxer cases. Plaintiffs paid this $1,950. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

109.     On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10141A in the amount of $150 for Hair Relaxer files. Plaintiffs paid this $150. It was later learned that Defendants conspired together to defraud and steal from

Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

110.     On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10143A in the amount of $300 for opening two files for Camp Lejeune files. Plaintiffs paid this $300. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

111.     On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10144A in the amount of $3,900 for opening 26 intake calls for Camp Lejeune files. Plaintiffs paid this $3,900. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

112.     On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10145A in the amount of $8,400 for ordering medical records for Camp Lejeune files. Plaintiffs paid this $8,400. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud and steal from Plaintiffs.

113.      On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10145A in the amount of $8,400 for ordering medical records for Camp Lejeune files. Plaintiffs paid this $8,400. It was later learned that Defendants did not perform

this alleged work, and all conspired together to defraud and steal from Plaintiffs.

114.    On May 7, 2024, TCI submitted to Plaintiffs Invoice Number 10142B in the amount of $12,500 for 102 intake calls for Hair Relaxer files. Plaintiffs paid this $12,500. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

115.    On May 13, 2024, TCI submitted to Plaintiffs Invoice Number 10172 in the amount of $1,350 for 6 intake calls for Camp Lejeune files. Plaintiffs paid this $1,350. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

116.    On May 13, 2024, TCI submitted to Plaintiffs Invoice Number 10173 in the amount of $73,050 for opening 487 cases for Camp Lejeune files. Plaintiffs paid this $73,050. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

117.    On May 13, 2024, TCI submitted to Plaintiffs Invoice Number 10174 in the amount of $450 for 3 intake calls for Hair Relaxer files. Plaintiffs paid this $450. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

118.    On May 23, 2024, TCI submitted to Plaintiffs Invoice Number 10172 in the amount of $1,350 for 9 intake calls opening for Camp Lejeune files. Plaintiffs paid this $1,350. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

119.    On May 23, 2024, TCI submitted to Plaintiffs Invoice Number 10173 in the amount of $73,050 for intake calls opening for Camp Lejeune files. Plaintiffs paid this $73,050. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

120.    On May 23, 2024, TCI submitted to Plaintiffs Invoice Number 10176 in the amount of $31,950 for 213 claim forms for Camp Lejeune files. Plaintiffs paid this $31,950. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

121.    On May 23, 2024, TCI submitted to Plaintiffs Invoice Number 10175 in the amount of $600 for 4 intake calls opening for Camp Lejeune files. Plaintiffs paid this $600. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

122.    On June 11, 2024, TCI submitted to Plaintiffs Invoice Number 10177 in the amount of $32,500 for Hair Relaxer files. Plaintiffs paid this $32,500. It was later learned that Defendants conspired together to defraud and steal

from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

123.    On June 11, 2024, TCI submitted to Plaintiffs Invoice Number 10178 in the amount of $5,400 for Hair Relaxer files. Plaintiffs paid this $5,400. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

124.    On June 11, 2024, TCI submitted to Plaintiffs Invoice Number 10182 in the amount of $27,450 for ordering 183 sets of medical records for Camp Lejeune files. Plaintiffs paid this $27,450. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

125.    On June 11, 2024, TCI submitted to Plaintiffs Invoice Number 10183 in the amount of $27,600 for 184 claim forms for Camp Lejeune files. Plaintiffs paid this $27,600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

126.     On June 11, 2024, TCI submitted to Plaintiffs Invoice Number 10179 in the amount of $5,100 for ordering 34 sets of medical records for Hair Relaxer files. Plaintiffs paid this $5,100. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

127.     On July 16, 2024, TCI submitted to Plaintiffs Invoice Number 10184 in the amount of $6,450 for 129 case files openings for Hair Relaxer files. Plaintiffs paid this $6,450. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

128.     On July 16, 2024, TCI submitted to Plaintiffs Invoice Number 10185 in the amount of $50,850 for Hair Relaxer files. Plaintiffs paid this $50,850. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

129.     On July 16, 2024, TCI submitted to Plaintiffs Invoice Number 10186 in the amount of $44,250 for Hair Relaxer files. Plaintiffs paid this $44,250. It was later learned that Defendants conspired together to defraud and steal

from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

130. On July 19, 2024, TCI submitted to Plaintiffs Invoice Number 10188 in the amount of $5,250 for 35 intake calls opening for Camp Lejeune files. Plaintiffs paid this $5,250. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

131. On July 19, 2024, TCI submitted to Plaintiffs Invoice Number 10187 in the amount of $1,050 for opening 7 Camp Lejeune files. Plaintiffs paid this $1,050. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

132. On July 19, 2024, TCI submitted to Plaintiffs Invoice Number 10188 in the amount of $5,250 for 35 intake calls for Camp Lejeune files. Plaintiffs paid this $5,250. It was later learned that Defendants did not perform, partially performed or performed unnecessarily and conspired together to defraud Plaintiffs.

133. On July 19, 2024, TCI submitted to Plaintiffs Invoice Number 10189 in the amount of $10,200 for ordering 68 sets of medical records for Camp Lejeune files. Plaintiffs paid this $10,200. It was later learned that Defendants did not perform this alleged work, and all conspired together to defraud Plaintiffs.

134. On July 27, 2024 TCI submitted to Plaintiffs Invoice Number 10186 in the amount of $44,250 for Hair Relaxer files. Plaintiffs paid this $44,250. It was

later learned that Defendants conspired to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly or performed unnecessarily.

135.  On July 29, 2024, TCI submitted to Plaintiffs Invoice Number 10189 in the amount of $10,200 for ordering 68 Camp Lejeune medical records. Plaintiffs paid this $10,200. It was later learned that Defendants conspired to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly or performed unnecessarily.

136.  On August 8, 2024, TCI submitted Invoice Number 10193 in the amount of $300 for opening two Camp Lejeune files. Plaintiffs paid this $300. It was later learned that Defendants conspired to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly or performed unnecessarily.

137.  On August 24, 2024, TCI submitted to Plaintiffs Invoice Number 10194 in the amount of $600 for four intake calls for Camp Lejeune files. Plaintiffs paid this $600. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

138.  On August 27, 2024, TCI submitted to Plaintiffs Invoice Number 10192 in the amount of $65,100 for 434 openings of Hair Relaxer files. Plaintiffs paid this $65,100. It was later learned that Defendants conspired together to defraud and

steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

139. On August 27, 2024, TCI submitted to Plaintiffs Invoice Number 10193 in the amount of $300 for opening two Hair Relaxer files. Plaintiffs paid this $300. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

140. On August 27, 2024, TCI submitted to Plaintiffs Invoice Number 10195 in the amount of $1,950 for ordering 13 sets of medical records for Camp Lejeune files. Plaintiffs paid this $1,950. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

141. On September 30, 2024, TCI submitted to Plaintiffs Invoice Number 10197 in the amount of $78,900 for 226 case reviews for Hair Relaxer files. Plaintiffs paid this $78,900. It was later learned that Defendants conspired together to defraud and steal from Plaintiffs as this work was not performed, performed incorrectly, performed improperly or performed unnecessarily.

142. Plaintiffs discovered many clients complained of a lack of follow-up calls by Defendants and other failures. Plaintiffs complained to Defendants and specifically assured Plaintiff of the large number of case managers they had, which was not true.

Plaintiffs complained about the lack of the numbers of claims that were processed but were assured of the numbers they alleged as being processed, Defendants assurances were not true.

143. On or about May 30, 2024, one of the owners of Plaintiffs, Venar Ayar, contacted Ilene Lee, the alleged CEO of TCI. Ayar questioned her on what was perceived as suspicious billings. Lee assured Ayar that TCI had over 30 case managers. In addition, since Defendants David and Sarah Bauman continually pushed the Plaintiffs to continue to use TCI and TPI, Ayar specifically asked Lee if either of the Baumans had any ownership or other interest in TCI or TPI. Lee reassured him that the Baumans had no interest and received nothing from TCI or TPI and the vast amounts of money the Plaintiff were being invoiced and paid. In truth, TCI and TPI were totally owned by the Baumans and the Baumans conspired in creating these Defendant businesses to defraud the Plaintiffs and steal money from them.

144. The Defendants failed in their duties and obligations, including billing for milestones that were not met; billing but failing to onboard clients; billing for intake calls but never talking to the client or anyone; billing for ordering medical records that were never ordered; billing for reviewing medical records that were never received; making an analysis on cases that were never even looked at.

145. Defendant ordered medical records and the bills for those records were sent

to and paid by Plaintiffs. Medical records themselves were very costly. Because medical records were ordered by Defendants without phone calls and analysis with the injured persons, medical records were ordered that there was no basis to order and Plaintiffs paid for these not only useless medical records, but very expensive useless medical records.

146.  Plaintiffs requested transparency by asking for call logs and other itemization records of what work was performed. Defendants will not disclose any such records. These are standard records in this business.

147. Plaintiffs have also requested transparency as to financial information to evidence where the over $2M Plaintiffs paid defendant went. Defendants will not disclose any financial information.

148.  The intentional acts and omissions of the Defendants have caused Plaintiffs to lose clients to other attorneys. This is because Defendants were to contact clients, and they did not. Clients contacted DV stating they had not been contacted.

## COUNT I – RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT (RICO) 18 U.S.C. 1961–1968

149.  Plaintiffs incorporate all other paragraphs into this count.

150. The Defendant individuals and corporations are a RICO enterprise pursuant to 18 U.S.C. 1961-1968, with the common purpose of defrauding, stealing and

absconding with Plaintiffs' money. The Defendants stole with every invoice and concealed the truth.

151.  Defendants' actions created a pattern of racketeering activity including two or more predictive acts within a specified time frame including massive fraud, hidden ownerships and hiding client and financial information.

152. The 114 itemized fraudulent invoices stated above amount to at least 114 intentional acts under RICO, all within a three-year time period.

153. The Defendants, each and every one of them, participated in the operation, management and carrying out of the racketeering enterprise.

154. The racketeering activity of Defendants was a direct cause of damages to the Plaintiffs, including but not limited to the itemized invoices above in fraudulent billings, paying for unnecessary medical records, losing clients because of Defendants lying about calling and talking with clients, pay borrowing fees and interest of 18% and other damages not presently known.

155. Plaintiffs directly suffered damages in excess of $2M and other damages not yet known.

156. Plaintiffs have standing as it has been and will continue to be directly harmed by the RICO acts of the Defendants.

157. Defendants' actions amounted to a violation of law pursuant to 18 USC Sections 1961–1968.

WHEREFORE, Plaintiffs request the Trier of Fact grant a judgment for Plaintiffs and against Defendants in an amount greater than $2M, interest, costs and attorney fees and such other relief as the Court deems appropriate.

## COUNT II – VIOLATION OF CALIFORNIA CIVIL CODE SECTION 3294 AND CALIFORNIA PENAL CODE SECTION 496

158.  Plaintiffs incorporate all other paragraphs into this count.

159.  Defendants' actions of business fraud and conspiracy violated California Civil Code Section 3294 and Penal Code Section 496 by their action and conspiracy described above.

160. Defendants created a fraudulent diversion of funds by the use of hidden ownerships, deceit and fraud.

161. Defendants' conduct of fraud and deceit arises to the level of fraud to which treple damages and attorney fees shall be awarded to Plaintiff.

162. Defendants' fraud and conspiracy were a direct cause of damages to the Plaintiffs, including but not limited to an amount greater than $2M in fraudulent billings, paying for unnecessary medical records, losing clients because of Defendants lying about calling and talking with clients and other damages not presently known.

WHEREFORE, Plaintiffs request the Trier of Fact grant a judgment for

Plaintiffs and against Defendants for treble damages, treble the payment of medical records, treble the fees lost on clients that left plaintiff due to Defendants failures to contact them, interest, costs and attorney fees and such other relief as the Court deems appropriate.

## COUNT III - BREACH OF CONTRACT

163.    Plaintiffs incorporates all other paragraphs into this count.

164.    DV and TCI entered into a contract.

159.  Plaintiffs satisfied their obligations under the contracts.

165. Defendants breached their duties, obligations and promises under the contracts by failing to properly onboard clients; by failing to properly perform intake calls and ongoing conversations with clients; by failing to properly make an analysis of the need to order medical records; by failing to provide an analysis of medical records; by billing for work which was not performed; by lying to Plaintiffs about Defendants' capabilities; by intentionally hiding the ownership of the companies; by failing to be transparent as to client lists and information and failing to be financially transparent.

166. As a direct or a proximate cause of defendants' multiple breaches Plaintiffs have suffered a monetary loss of over $2M, in addition to losses of clients and other injuries and damages not presently known.

WHEREFORE, Plaintiffs request the Trier of Fact grant a Judgment for Plaintiffs and against Defendants in an amount greater than $2M, interest, costs and attorney fees and Plaintiffs requests this Court Order full disclosure and accounting of all moneys and such other relief as the Court deems appropriate.

## COUNT IV – FRAUDULENT MISREPRESENTATION

167.    Plaintiffs incorporate all other paragraphs into this count.

168.    Defendants made many misrepresentations to Plaintiffs.

169.    Defendants' misrepresentations were significant and important to Plaintiffs.

170.    The misrepresentations were intended to cause the Plaintiffs to act and rely on defendants' misrepresentations.

171.    Plaintiffs did in fact rely on defendants' misrepresentations.

172. Plaintiffs have suffered losses as a direct result of the misrepresentations made by Defendants.

WHEREFORE, Plaintiffs requests the Trier of Fact grant a judgment for

Plaintiffs and against Defendants in an amount greater than $2M, interest, costs and attorney fees and Plaintiffs request this Court Order full disclosure and accounting of all moneys and such other relief as the Court deems appropriate.

## COUNT V – TORTIOUS INTERFERENCE

173.  Plaintiffs incorporate all other paragraphs into this count.

174.  There existed valid and enforceable contracts between DV and its clients.

175. Defendants knew of these valid and enforceable contracts and relationships between DV and its clients.

176. Defendants many intentional acts, omissions and breaches directly caused damages and losses to those relationships and contracts.

WHEREFORE, Plaintiffs request the Trier of Fact grant a judgment for Plaintiffs and against Defendants in an amount greater than $2M, interest, costs and attorney fees and Plaintiffs request this Court Order full disclosure and accounting of all moneys and such other relief as the Court deems appropriate.

## COUNT VI – BREACH OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 (HIPPA)

177. Plaintiffs incorporate all other paragraphs into this count.

178.  Defendants were responsible for deciding which medical records were needed, to obtain appropriate authorizations, and to order and review medical records.

179. Defendants ordered medical records for clients who had died. They did this without appropriate authorization or consent. Appropriate authorization may have been to open a Probate Estate or some other process. However, Defendants ordered and reviewed the medical records of decedents without proper authorizations.

180. Defendants also ordered medical records without proper authority or consent from living persons.

181. The Health Insurance Portability and Accountability Act (HIPPA) includes a Privacy Rule which requires authority or consent of medical records.

182. Defendants' unauthorized obtaining, release and dissemination of decedents' medical records was a wrongful disclosure and violation of HIPPA and costs the Plaintiffs greater than $75,000 in unnecessary medical document ordering.

WHEREFORE, Plaintiffs requests the Trier of Fact grant Plaintiffs Judgment against Defendants in an amount greater than $75,000 and other relief deemed appropriate.

## COUNT VII – DECLARATORY RELIEF AS TO BENTLEY CONSULTING, LLC CONTRACT

183. Plaintiffs incorporate all other paragraphs into this count.

184. Defendant Bentley Consulting LLC is demanding 12% of the settlement of every Camp Lejeune case. This is based on a contract drafted by Bentley Consulting LLC.

185. The contract reads in part that Bentley Consulting LLC is to receive "12% of the gross atty fees for each Camp Lejeune case" even though "Bentley is expressly not acting as attorneys in this matter."

186. Bentley Consulting LLC is not a licensed attorney and is not a law firm.

187. The owners of Bentley, David Bauman and Sarah Hale Bauman, were practicing law in California despite the fact they were not licensed California attorneys.

188. Bentley Consulting LLC is a California company with its principle and only place of business in California.

189. Under the California Bar Rules of Professional Conduct, Rule 5.4, fee sharing with a non-attorney is not permitted.

190. The Bentley Consulting LLC contract for 12% of attorney fees is illegal as it directly conflicts with the California Bar Rule of Professional Conduct 5.4.

191. In addition, under the contract Bentley provides attorney services, such as supervising paralegals, preparing complaints and advising on ultimate case decisions. In California non-attorneys are not allowed to practice law without a license. This is the Unlicensed Practice of Law.

192. This contract was drafted by Bentley and therefore should be interpreted against Bentley as the drafter.

193. Therefore, this Court should declare this contract null and void.

WHEREFORE, Plaintiffs request the Court grant Declaratory Relief that the Bentley Consulting LLC contract be declared illegal, null and void and grant such other relief as the Court deems appropriate.

JURY DEMAND: Plaintiffs demand a jury trial on all counts.

Dated: November 19, 2024

Respectfully submitted,
*/S/ Mark L. Teicher (P34301)*

Of Counsel
Law Office of Venar Raad Ayar, PLLC
30095 Northwestern Hwy., Suite 102
Farmington Hills, MI  48334
MarkTeicher@utbmanagement.com